UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBERT D. MITCHELL,

    Plaintiff,

v.                                                 Case Number: 06-11547

CITY OF YPSILANTI and OFFICER        HON. MARIANNE O. BATTANI
BRENT YUCHASZ,

    Defendants.
                                            /

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS OR IN THE
ALTERNATIVE FOR SUMMARY JUDGMENT**

Before the Court is Defendants City of Ypsilanti and Officer Brent Yuchasz's Motion to Dismiss or in the Alternative for Summary Judgment (Doc. No. 31). At a hearing on April 4, 2007, the Court allowed Plaintiff's counsel to withdraw, instructed Plaintiff to file a response to the motion on or before May 4, 2007, and informed the parties that the matter would be resolved on the pleadings. See E. D. Mich. LR 7.1(e)(2). The Court has reviewed the pleadings, and for the reasons that follow, the motion is **GRANTED in part and DENIED in part**.

**I. STATEMENT OF FACTS**

Plaintiff Albert Mitchell's claims arise out of two contacts he had with Defendant Yuchasz, a police officer employed by Defendant City of Ypsilanti. On April 1, 2003, Officer Yuchasz pulled over Stacey Williams, who was driving a car that did not have a visible rear license plate. As Defendant Yuchasz moved toward her vehicle, Plaintiff,

who had been following Williams, approached the officer. Yuchasz asserts that he asked Plaintiff to step back, but Plaintiff refused. Because Plaintiff refused to comply with repeated requests, Yuchasz radioed for assistance. After Yuchasz handcuffed Williams, he directed his full attention to Mitchell.

In the meantime, Officer Daniel Buffa arrived to assist. The officers contend that Plaintiff kept his left hand in his jacket pocket, refused to answer whether he had a weapon, and continued to gesture in a manner suggesting that he was trying to access something in his jacket pocket. Officer Yuchasz arrested Plaintiff, who continued to resist the officers' attempts to control him. Yuchasz used a chemical agent to subdue Plaintiff, who continued to resist the officers. Plaintiff was handcuffed and taken to the station for booking. Defs.' Ex. A at 29-97.

Plaintiff was charged with interfering with the police. Id. at 24, 27-8, 115, 122. Plaintiff claims that Yuchasz did not use pepper spray until after Plaintiff was handcuffed, and that a videotape of the events giving rise to the charge would have exonerated him; however, this evidence was destroyed. During Plaintiff's November 18, 2004 criminal trial, the judge determined that a videotape of the events had been disposed of in accordance with police department policy and procedure, which required tapes to be reused after 30 days, unless needed by the prosecutor. See Defs.' Ex. A at 7-8, 43-44, 66-67. Consequently, the City's failure to produce the tape was neither improper or intentional. Id. Plaintiff was convicted after a jury trial.

Between the first arrest and trial, Plaintiff was involved in a second incident with Officer Yuchasz on November 15, 2003. The facts are disputed. Plaintiff claims that he was using a pay phone in a parking lot, when Yuchasz pulled up behind him. According

to Yuchasz, he observed a vehicle that did not come to a compete stop at an intersection. Consequently, Yuchasz activated his emergency lights and pulled over the vehicle, which Plaintiff was driving. There is no dispute that the Secretary of State's records indicated that Mitchell's license was suspended, albeit incorrectly. There is no dispute that Plaintiff acted nervous, or that after Yuchasz told Plaintiff he was under arrest for driving with a suspended license and asked Plaintiff to step out of the car, Plaintiff drove away.

Officer Yuchasz followed Plaintiff and attempted to pull him over on several occasions. Eventually, Plaintiff turned into a driveway, jumped out of the vehicle, and locked the doors, and ran. Plaintiff refused to stop as ordered, and Yuchasz tackled Plaintiff to the ground. Officer Jill Kulhanek arrived and assisted with the arrest. Plaintiff was charged and convicted of fleeing and eluding, assaulting, resisting, and/or obstructing a police officer.

In addition to these charges, Yuchasz claims that he saw Plaintiff throw something out of his car window, which the officer eventually retrieved. According to Defendants, it was cocaine. Mitchell testified that the cocaine was planted. Plaintiff was charged with and acquitted of cocaine possession.

On March 31, 2006, Plaintiff filed his Complaint. In his Second Amended Complaint, Plaintiff alleges that his civil rights were violated. He seeks damages in the amount of $10,000,000.

## II. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact

4

would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)).  To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50.  "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  The evidence itself need not be the sort admissible at trial.  Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000).  However, the evidence must be more than the nonmovant's own pleadings and affidavits.  Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001).  The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant.  Anderson, 477 U.S. at 252.

### III.  ANALYSIS

Plaintiff seeks relief under federal and state law.  Defendants move for summary judgment on all the claims.

## A. Federal Claims

Plaintiff pursues his federal claims pursuant to 42 U.S.C. § 1983. It provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Under the language of the statute, to succeed on a § 1983 claim, a plaintiff must prove that a person deprived him of a federal right and that person acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

There is no dispute that Defendant officer Yuchasz was acting under color of state law during the incidents giving rise to this lawsuit. The federal rights at stake include freedom from excessive force, wrongful seizure, and malicious prosecution. Plaintiff also advances a claim of municipal liability against the City.[1]

### 1. Excessive Force

The Fourth Amendment of the United States Constitution protects the "right of

---

[1] Plaintiff mentions violations of his rights as protected by First and Eighth Amendments. Plaintiff does not elaborate on these contentions, and the Court finds the facts taken in the light most favorable to Plaintiff fail to implicate any violation. To make out a *prima facie* case of a First Amendment retaliation claim, Plaintiff must show: (1) he was engaged in constitutionally protected speech/association; (2) he was subjected to adverse actions that caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that conduct; and, (3) the adverse actions were motivated at least in part by the protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). For purposes of the Eighth Amendment's prohibition on cruel and unusual punishment, "the State does not acquire the power to punish [ ] until after it has secured a formal adjudication of guilt . . ."). Ingraham v. Wright, 430 U.S. at 670, 671-72 (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)).

the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV. In assessing the viability of a claim arising from the alleged excessive force, the Court analyzes Yuchasz's conduct under the Fourth Amendment and its "reasonableness standard." Graham v. Connor, 490 U.S. 386, 394-95 (1989).

Specifically, to determine whether a particular use of force is reasonable as opposed to excessive, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." Graham, 409 U.S. at 396. The test requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. The question is whether an officer's action was "objectively reasonable" given the facts and circumstances confronting the officer at the time of the use of force. Id.

The Court is mindful that not every push or shove gives rise to a § 1983 claim, and minimal use of force does not support such a claim. Id.; Collins v. Nagle, 892 F.2d 489, 496 (6th Cir. 1989). Although an officer may use force to gain compliance with an order, "even where some force is justified, the amount actually used may be excessive." Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002). Therefore, even if the Yuchasz was entitled to use force to arrest Plaintiff, the degree of force used must have been reasonable as a matter of law for Defendants to succeed in their motion.

In this case, in assessing whether the conduct was reasonable as a matter of

law, the Court must resolve factual disputes in favor of Plaintiff, the nonmoving party. Plaintiff asserts that he did not resist arrest and that he was pepper-sprayed after he was handcuffed. Despite the apparent unreasonableness of such conduct when Plaintiff's version of events is credited, Defendants maintain that his claim is barred under Heck v. Humphrey, 412 U.S. 477 (1994).

In Heck, the Supreme Court held that a plaintiff cannot make a cognizable §1983 claim for an alleged unconstitutional conviction or "for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid unless the plaintiff proves that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . . A claim or damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 486-87.

In Cummings v. City of Akron, 418 F.3d 676, 682-83 (6th Cir. 2005), the appellate court held that Heck barred an excessive force claim where the incident between the plaintiff and the officers gave rise to both the plaintiff's conviction and the excessive force claim, and the two were "inextricable intertwined." The Court finds that is not the case here.

Plaintiff was convicted on November 18, 2004, of interfering with a police officer's attempts and efforts to maintain, preserve, and keep the peace. One of the elements of the interference charge is that "the officer was then carrying out lawful duties." Defs.' Ex. A at 116. Plaintiff's state conviction has not been invalidated or called into question. Thus, the jury found that Plaintiff did interfere with Officer Yuchasz, who was carrying out his lawful duties. To award summary judgment to Defendants, they must

show as a matter of law that Plaintiff's argument to contrary runs afoul of the principles of Heck. Because the jury found that Officer Yuchasz was carrying out lawful duties, it necessarily found that he was executing a lawful arrest. It did not necessarily find that he did not engage in the use of an unreasonable amount of force after arresting Plaintiff.

Plaintiff contends in this litigation that Yuchasz pepper-sprayed him after he was handcuffed and that he never resisted arrest. The conduct subsequent to Plaintiff's arrest is not inextricably intertwined in the jury's rejection of Plaintiff's version of the events--that he peacefully observed from afar. He was convicted of obstructing the officer, not of resisting arrest. Accordingly, Defendants' request for summary judgment on this claim is denied.

The Court reaches a different conclusion relative to Plaintiff's claim arising out of his subsequent encounter with Yuchasz. Specifically, any claim of excessive force relative to this incident is precluded by Heck. Mitchell was convicted of resisting or obstructing a police officer and that conviction is inextricably intertwined with any claim of excessive force. At Plaintiff's criminal trial, the court instructed the jury that the first element of that offense was that the defendant, Mitchell, "assaulted, battered, wounded, resisted, obstructed, opposed or endangered an officer of the law." Defs.' Ex. C at 204. The elements of the charge for which he was convicted, would be called into question and is not cognizable under § 1983.

### 2. Illegal seizure

Plaintiff also claims that he was subjected to an illegal stop during the November 15, 2003, incident. Mitchell maintains that he was not even driving so a civil infraction

9

could not have occurred.  Plaintiff testified Yuchasz approached him in the parking lot and asked to see his license.  Yuchasz testified that after he observed Plaintiff running a stop sign, he activated his lights and pulled Plaintiff over.  Plaintiff pulled into a nearby abandoned gas station and stopped by a pay phone.  Yuchasz exited his vehicle and approached Plaintiff's.  The dispute does not raise a genuine issue of material fact.

In <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), the Supreme Court held that a seizure occurs whenever a police officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen."    The Fourth Amendment, as applied to the states through the Fourteenth Amendment, requires that any search and seizure be reasonable.  Pursuant to <u>Terry</u>, the legitimate governmental interest of effective crime prevention and detection allows a police officer, even though no probable cause for arrest exists, in appropriate circumstances and in an appropriate manner to stop and question a person for the purpose of investigating possible criminal behavior.  392 U.S. at 22.  An officer must confine his investigation to what is minimally necessary to achieve the justified, proper objective.

Here, even crediting Plaintiff's version of events, Yuchasz did.  If in fact, Plaintiff had been sitting in his car, a Cadillac with tinted windows after midnight, in an abandoned gas station by a pay phone for almost ten minutes, Yuchasz's decision to approach Plaintiff was reasonable.  At that point, there would be no basis for Plaintiff to think that he was not free to leave.  Plaintiff's testimony as to what occurred thereafter renders the "seizure" reasonable.

Plaintiff testified that the officer asked to see Plaintiff's license.  In response, Mitchell said, "What are you harassing me for?" Defs. Ex. C at 60.   Mitchell admitted his hands were shaking and he was nervous.  <u>Id.</u>  At this point, Yuchasz had a basis for

10

checking Plaintiff's license. Once Yuchasz ascertained the license had been suspended, albeit erroneously, he had reason to continue his questioning of Plaintiff. Accordingly, no violation of Plaintiff's Fourth Amendment rights occurred as a result of the investigatory stop.

### 3. Malicious Prosecution

Plaintiff cannot proceed on a malicious prosecution claim for those offenses for which he was found guilty. The Heck Court elaborated on the rationale for requiring a plaintiff to show the prior criminal proceeding terminated in favor of the accused:

> This requirement avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction. Furthermore, to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit. This Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack. We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

412 U.S. at 484-85 (internal citations and punctuation omitted). Accordingly, Plaintiff cannot challenge the obstruction or the fleeing and eluding charges with a claim of malicious prosecution.

Defendants did not address this cause of action relative to Plaintiff's allegation that Yuchasz planted cocaine at the scene. The jury acquitted Mitchell of the charge of cocaine possession. Consequently, Defendants have failed to show they are entitled to summary judgment on the malicious prosecution claim in this limited aspect.

### 4. Municipal Liability

To recover against the City, Plaintiff must show that his civil rights were violated pursuant to and as a direct result of its official policy or custom. See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-95 (1978). The alleged unconstitutional action must implement either a policy or ordinance officially promulgated by the City, or constitute a governmental "custom" which, although not formally adopted, "can fairly be said to represent official policy." Id. at 690-91, 694. The burden in this regard requires a showing that the unconstitutional policy or custom existed, that the policy or custom was connected to the City, and that the policy or custom caused his constitutional violation. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985); Doe v. Claiborne County, Tenn., 103 F.3d 495, 507 (6th Cir. 1996). Alternatively, to prove that the City of Ypsilanti has an unconstitutional policy of failing to train, one "must prove that the training program is inadequate to the task an officer must perform; that the inadequacy is the result of deliberative indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390-91 (1989)).

In this case, Plaintiff's response suggests that his claim is based on the City's failure to investigate Defendant Yuchasz's "misconduct." He asserts that the City ignored his citizen complaint. He further claims that the City allows its officers to assault citizens and destroys evidence, conduct which has resulted in the mistreatment of other residents. Plaintiff identified several other African Americans who, he claims, have been arrested by an Ypsilanti police officer and subjected to excessive force.

His unsupported assertion is insufficient as a matter of law to raise a genuine issue of material fact. Mitchell's allegations that the City failed to investigate his citizen complaint falter in light of the January 24, 2004, letter he received from the Captain of Police, informing him that his citizen complaint had been investigated and his allegations found to be unsubstantiated. Mitchell received a second letter on August 21, 2004, indicating the same. Dissatisfaction with the outcome of the investigation does not satisfy Plaintiff's burden to show the existence of a genuine issue of material fact. Further, Mitchell's attempt to show a pattern of misconduct by Ypsilanti police officers by naming others who have been arrested does not sustain his burden on summary judgment. Finally, a state court found that the City acted in compliance with its policy when it reused the videotape of Plaintiff's first arrest. No inference of a cover-up arises from the City's conduct. In sum, Plaintiff has not provided any evidence to the Court to support his allegations of municipal liability, and his claim fails as a matter of law.

Consequently, the Court finds that, Defendants are entitled to summary judgment on Plaintiff's claim against the City.

**B. State Claims**

In addition to Plaintiff's federal claims, he asserts violations of state law. Specifically, Plaintiff advances claims of assault and battery and malicious prosecution. The Court discusses the merits of each below.

**1. Assault and battery**

In Michigan, a police officer who uses excessive force may be held liable for assault and battery. White v. City of Vassar, 403 N.W.2d 124 (1987). The governmental tort liability act, MICH.COMP.L §691.1401 et seq., does not provide individual officers with

13

immunity for intentional torts such as assault and battery. Sudul v. City of Hamtramck, 562 N.W.2d 478 (1997). However, a governmental officer's actions that would normally constitute intentional torts are shielded from liability if those actions are justified because they were objectively reasonable under the circumstances. Van Vorous v. Burmeister, 687 N.W.2d 132 (2004).

In light of the Court's finding relative to the excessive force claim, however, summary judgment on this state claim must likewise be denied as to the April 1, 2003, incident and granted as to the November 15, 2003, incident.

### 2. Malicious prosecution

To succeed in a state malicious prosecution action, a plaintiff had the burden of proving four elements: "(1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." Matthews v Blue Cross and Blue Shield of Michigan, 572 N.W.2d 603 (1998).

In this case, Plaintiff cannot succeed on his claim that he was maliciously charged with assaulting, resisting and obstruction of a police officer because he was convicted of those offenses. The jury did acquit Plaintiff of the cocaine possession charge, and he asserts in his Second Amended Complaint that the drugs were planted. Plaintiff's claim qualifies as an intentional tort, see Adams v. Nat'l Bank of Detroit, 508 N.W.2d 464 (1993), and therefore is not shielded from the governmental immunity statute as to government employees. Sudul, 562 N.W.2d 478.

Defendants do not address this claim, and therefore have failed to show that Yuchasz is entitled to summary judgment on this claim.

## IV. CONCLUSION

In accordance with the opinion issued above, the Court **GRANTS** summary judgment to Defendant City of Ypsilanti and **GRANTS in part and DENIES in part** summary judgment to Officer Yuchasz. Plaintiff's state and federal malicious prosecution claims relative to the cocaine possession charge survive summary judgment. In addition, Plaintiff's claim of excessive force and assault arising out of his contention that he was pepper-sprayed after he was handcuffed can proceed.

**IT IS SO ORDERED**.

                                                   s/Marianne O. Battani
                                                   MARIANNE O. BATTANI
                                                   UNITED STATES DISTRICT JUDGE

Dated: `August 3, 2007`

## CERTIFICATE OF SERVICE

A copy of this Order was served upon on this date by ordinary mail and/or electronic filing to Albert Mitchell and counsel of record.

                                                  s/Bernadette M. Thebolt
                                                  Deputy Clerk